IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL TURNER,

        Plaintiff,

  v.

OAKLAND POLICE OFFICERS CHRISTOPHER CRAIG, J. TURNER, P. PHAN, CITY OF OAKLAND

        Defendant.

        No. C 09-03652 SI

        **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Defendants filed a motion to dismiss on January 14, 2010. Pursuant to local Rule 7-1(b), the Court finds it appropriate to resolve the pending motion without oral argument. For the reasons set forth below, this Court GRANTS defendants' motion to dismiss with leave to amend. If plaintiffs wish to amend the complaint, they must file an amended complaint by **March 22, 2010.**

## BACKGROUND

**I.  Procedural Background**

Plaintiff filed his complaint on August 10, 2009. Defendants filed a motion to dismiss on September 30, 2009, and plaintiff filed a first amended complaint on the same day. On October 20, 2009, defendants moved to dismiss the first amended complaint. Oral argument on that motion was held on December 15, 2009. The Court granted the motion to dismiss from the bench and granted plaintiff leave to file a second amended complaint. Plaintiff filed a second amended complaint the same day. Subsequently, plaintiff requested a written order to supplement the Court's oral ruling, and the Court issued a written ruling on January 14, 2010. Presently before the Court is defendant's motion to dismiss

the second amended complaint ("SAC").

## II.     Factual Background

Plaintiff was riding as a passenger in his own vehicle on March 23, 2009. Plaintiff's vehicle was pulled over by Officers Phan and Turner around 7:00 pm, allegedly because the vehicle had expired registration tags. SAC ¶¶ 12-13. According to the complaint, after searching the driver's person the officers found marijuana and informed plaintiff that the driver of his vehicle would be taken to jail. *Id.* ¶ 14. Allegedly, the officers then handcuffed plaintiff and "after determining that he had no drugs or contraband, the police told plaintiff they were taken [sic] him to jail for being in the presence of another felon." *Id.* ¶ 17. After plaintiff told the police that "no law or court order" prohibited him from being in the presence of another felon, "they told him that it did not matter they would find something else for which to take him to jail." *Id.* ¶ 18.

The complaint alleges that after searching the vehicle the police found a bottle of colored liquid, which plaintiff informed the police was "blessing oil" used during prayer.[1] *Id.* ¶ 20. The officers confiscated the oil and asked plaintiff where he lived. *Id.*[2] Leaving plaintiff in the car, the police entered plaintiff's home using a key they obtained from the Oakland Housing Authority, but found no contraband. *Id.* ¶ 25.

Plaintiff alleges that he overheard the officers admit they did not know whether or not the liquid was contraband. *Id.* ¶ 32. The officers then went to another officer, Christopher Craig, who "took charge of the scene and . . . looked at the blessing oil." *Id.* ¶ 34. The complaint alleges that Craig could not determine if the substance was illegal, and opened up a booklet with pictures of illegal substances

---

[1] The complaint does not reference the color or smell of the substance, nor the shape and size of the bottle. However, in his moving papers, plaintiff states that the liquid was colored and that it had the consistency of oil. Opp. at 6.

[2] As a condition of his parole, plaintiff agreed to "be searched without warrant by an agent of the Department of Corrections or any law enforcement officer" at any time, including at his home. *See* Notice and Conditions of Parole, ex. 1 to Def. RJN. Plaintiff does not allege whether or not the officers were aware of this fact when they conducted their search.

2

to determine if the substance was hashish oil, but "admitted that he [Craig] did not have knowledge of the consistency or smell of the blessing oil to be able to determine whether [sic] was hashish oil or any other unlawful substance." *Id.* ¶ 38.

The complaint alleges that after plaintiff attempted to explain that the oil was simply for prayer, Officer Craig exclaimed "Blessing oil my ass! You are going down for the oil." *Id.* ¶ 42. The officers then arrested plaintiff, seized and towed his vehicle, and took plaintiff to jail. *Id.* ¶ 45-46. According to the complaint, plaintiff "spent about a week in jail" before being released, allegedly because the oil was finally "tested and determined not to contain any unlawful substances." *Id.* ¶ 46.

Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of his First and Fourth Amendment rights, a *Monell* claim against the City of Oakland, and state law claims for false arrest and intentional infliction of emotional distress against all defendants. Plaintiff seeks compensatory damages in the amount of $500,000, a like amount of punitive damages, and attorney's fees.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court

3

must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**I.     Section 1983 Claims**

42 U.S.C. § 1983 provides a cause of action for the "'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). To state a claim under section 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting "under color of state law." *See West v. Atkins*, 487 U.S. 42, 48 (1988). Here, plaintiff alleges that defendants violated his First Amendment rights, his Fourth Amendment rights, and alleges municipal liability under *Monell v. Dep't of Soc. Serv. of N.Y.*, 436 U.S. 658, 694 (1978).

**A.     First Amendment Claims**

As explained in the Court's prior order granting the motion to dismiss plaintiff's previous complaint, the Free Exercise clause of the First Amendment, as applied to the states by incorporation in the Fourteenth Amendment, provides that "'Congress shall make no law respecting an establishment of religion, *or prohibiting the free exercise thereof*.'" *Employment Div., Oregon Dep't of Human*

4

*Resources v. Smith*, 494 U.S. 872, 876-77 (1990) (citing U.S. Const. Amend. I) (emphasis in *Smith*).

Plaintiff alleges that when officer Craig exclaimed "Blessing oil my ass! You are going down for the oil" and subsequently seized the liquid, "the Defendants . . . deprive[d] Plaintiff of his Constitutionally protected [right] . . . to be free from interference with his freedom of expression and to be free to exercise his religion as protected by the First Amendment to the United States Constitution." SAC ¶ 49. Additionally, plaintiff asserts that the officers' conduct "desecrat[ed] plaintiff's blessing oil," and that the arrest constituted a "violation of [plaintiff's] right to practice his religion."[3] *Id.* ¶ 42.

However, as this Court stated in its prior order, plaintiff must plead that the government actor's conduct had the "object or purpose" of suppressing religion or religious conduct. Jan. 14, 2010 Order at *4 [Docket 37]; *see also Church v. Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 530, 533-45 (1993). Conduct which has an "incidental or tangential effect" on religious practice is not sufficient to establish a violation of the free exercise clause, absent a showing that such conduct is not rationally related to a legitimate governmental interest. *Id.* at 531. Here, plaintiff has failed to plead that the officers had the object or purpose of suppressing plaintiff's religion.

Defendants contend that the impetus for pulling over plaintiff's vehicle was the expired registration tags, and that the arrest focused on the presence of drugs on the driver. The fact that the liquid in controversy was labeled "blessing oil" by plaintiff and allegedly mocked by defendants does not establish that it was the intention of the officers to suppress plaintiff's religion. Moreover, the complaint's assertion that defendant Craig exclaimed "Blessing Oil my ass" suggests only that the officers did not believe plaintiff's liquid was of religious origin, rather than demonstrating they had the object or purpose of interfering with plaintiff's alleged religion.

The Court previously informed plaintiff that he must provide some description of his religious

---

[3] In his moving papers, plaintiff intimates that race may have played a factor in being pulled over; as evidence attaches a copy of his driver's license. However, plaintiff does not allege that the conduct at issue was motivated by race in his complaint, nor does he allege how the issue of racial discrimination relates to any of his claims. Opp. at 6.

1 practices in order to state a claim. *See* Jan. 14, 2010 Order at *4. Plaintiff's SAC provides no such description. Plaintiff argues that "[i]t is not a requirement, and no case holds, that the Plaintiff actually inform the Defendants the name of his religion," and that this Court should not inquire as to the truth of plaintiff's religious beliefs. Opp at 9-10. However, plaintiff's argument is a red herring. This Court's previous order did not evaluate the reasonableness of plaintiff's alleged religious beliefs; rather, it sought to apply the standard articulated in *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981) ("to merit protection under the free exercise clause of the First Amendment . . . the claimant's proffered belief must be sincerely held . . . and the claim must be rooted in religious belief.") Absent some description of plaintiff's religion, his religious practices, and the role and importance of blessing oil in the religion, it is impossible to determine whether plaintiff's beliefs are sincerely held and whether blessing oil is rooted in that religious belief. Plaintiff's complaint does not establish what his religion is, and how blessing oil is important to that religion, thus falling short of the requirements articulated in *Callahan*.

Accordingly, the Court GRANTS defendants' motion to dismiss plaintiff's First Amendment claims, without prejudice. Should plaintiff choose to amend his complaint, he must take heed of the concerns stated in this Order and the Court's January 14, 2010 Order.

### B.     Fourth Amendment Claims

#### 1.     Probable Cause for Arrest

A warrantless arrest is lawful under the Fourth Amendment if the arrest is supported by probable cause. *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). The "quanta of proof" necessary in ordinary judicial proceedings are not applicable to probable cause determinations, and therefore officers need not establish beyond a reasonable doubt or even by a preponderance of the evidence that a suspect is guilty of a crime. *Illinois v. Gates*, 462 U.S. 213, 235 (1983). Probable cause for arrest exists where there are reasonable grounds for belief of guilt, and that belief is particularized to the person to be searched or seized. *Pringle*, 540 U.S. at 371. Such a determination "is incapable of precise definition or

1 quantification into percentages because it deals with probabilities and depends on the totality of
2 circumstances." *Id.* Accordingly, probable cause is a "fluid concept - turning on the assessment of
3 probabilities in [a] particular factual context[]." *Gates*, 462 U.S. at 232. To determine the existence of
4 probable cause, courts examine the events leading to a warrantless arrest "and then decide whether these
5 historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to
6 probable cause." *Pringle*, 540 U.S. at 371 (internal quotation marks and citations omitted).

7 Plaintiff does not contest the initial stop or the search but alleges that defendants lacked probable
8 cause to arrest him and therefore his Fourth Amendment right to be free from unreasonable searches and
9 seizures was violated. In particular, plaintiff argues that "[p]osession of a small vile [sic] containing
10 colored oil, coupled with the fact that Plaintiff was on parole for domestic violence, riding in a vehicle
11 with expired registration, driven by another person with a joint in his pocket is not probable cause to
12 arrest." Opp. at 6. Plaintiff asserts several factors should have weighed against a finding of probable
13 cause: (1) plaintiff informed the officers that the bottle of liquid was blessing oil and not drugs, and (2)
14 plaintiff allegedly overheard defendants admitting they were not sure if the liquid was illegal, (3)
15 defendants lacked experience in detecting hashish oil, and (4) defendants "detained and arrested
16 [plaintiff] long after it should have been evident to a reasonable officer that he had no contraband and
17 that he was clean." Opp at 7. Defendants argue that the officers had probable cause because (1)
18 plaintiff's companion, who was driving plaintiff's vehicle with an expired registration, was in
19 possession of marijuana, and (2) a search of the glove compartment uncovered a bottle of colored liquid
20 the officers believed was hash oil. Mtn to Dismiss at 5.

21 This Court has previously determined that the facts plaintiff highlights do not suggest "more than
22 a sheer possibility" that the officers lacked probable cause, and that officers do not have to rule out the
23 possibility of innocence to have probable cause for arrest. *See Iqbal*, 129 S.Ct. at 1949; *United States*
24 *v. Sutton*, 794 F.2d 1415, 1427 (9th Cir. 1986). Plaintiff has failed to allege any additional facts which
25 support the contention that the officers lacked probable cause. Defendants contend that, under the
26 circumstances, finding a bottle of oil in the glove compartment was "analogous" to finding "a green

1 leafy substance and rolling papers," circumstances which would certainly provide probable cause. Mtn
2 to Dismiss at 7; *see United States v. Wallace*, 213 F.3d 1216, 1220 (9th Cir. 2000). While in isolation
3 a bottle of colored liquid may not be as suspicious as rolling papers and a green leafy substance, in
4 combination with finding drugs elsewhere in the vehicle a police officer could reasonably have
5 determined that the bottle of colored liquid was an illegal substance, providing probable cause for
6 plaintiff's arrest.

7 Accordingly, this court GRANTS defendants' motion to dismiss, with leave to amend. Should
8 plaintiff choose to amend his complaint, he must set forth specific facts which tend to show that a
9 reasonable officer could not have concluded there was probable cause for arrest, consistent with the
10 concerns stated in this Order and the Court's January 14, 2010 Order.

### 2. Unlawful Detention

Plaintiff also contends that "the length of detention and time in which it took Defendants to get the substance tested" violated the Fourth Amendment. SAC ¶ 46. Plaintiff alleges that he spent "about a week" in jail before the substance was tested and he was released. *Id.* Plaintiff does not state the precise amount of time plaintiff spent in jail and whether he ever appeared before a magistrate. Defendants do not address the reasonableness of the length of detention in their briefs, and plaintiff has not highlighted the issue in his opposition papers despite referencing it in passing in the complaint.

A lawfully arrested individual is entitled to a justified detention, since an unjustified detention "amounts to punishment prior to conviction." *Moore v. Marketplace Restaurant, Inc.*, 745 F.2d 1336, 1350 (7th Cir. 1985). Thus, even if the officers had probable cause for plaintiff's arrest, he had a right to a reasonable length of detention. Under *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975), individuals arrested without a warrant are entitled to prompt judicial determinations of probable cause. Officers may hold a suspect for "*a brief period of detention* to take the administrative steps incident to arrest. Once the suspect is in custody, however, the reasons that justify dispensing with the magistrate's neutral judgment evaporate." *Id.* (emphasis added). Officers cannot detain an individual for the sole purpose

of investigating and building a case. *Kanekoa v. City and County of Honolulu*, 879 F.2d 607, 612 (9th Cir. 1989).

Absent a probable cause hearing within 48 hours of arrest, the length of detention is presumptively unreasonable. *Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991).[4] *Id.* Failure to provide a probable cause determination within 48 hours shifts the burden to officers to demonstrate the existence of an emergency or other extraordinary circumstance justifying the detention. *Anderson v. Calderon,* 232 F.3d 1053, 1070 (9th Cir. 2001) (citations omitted) (overruled on other grounds by *Bittaker v. Woodford*, 331 F.3d 715, 728 (9th Cir. 2003)) (finding that a 76-hour delay was unreasonable). However, a probable cause determination can be unreasonable even if given within 48 hours "if the arrested individual can prove that his or her probable cause determination was delayed unreasonably." *McLaughlin,* 500 U.S. at 56.

The allegations in the complaint are insufficient to establish the precise length of plaintiff's detention, as well as the circumstances of that detention. The complaint vaguely references spending "about a week" in jail before being released, but is unclear as to whether any independent probable cause determination was made. Because plaintiff has not set forth sufficient facts in support of a Fourth Amendment claim for unlawful detention, this Court GRANTS defendants' motion to dismiss. However, the Court grants leave to amend so plaintiff can allege with greater particularity the facts surrounding his detention, including its length, circumstances, and the defendant or defendants allegedly responsible for the detention.

### C.   *Monell* Claim

Plaintiff alleges that a lack of adequate training and appropriate policies and procedures in "how to detect hashish oil or other narcotics" caused the officers' "poor judgment in assessing narcotics." SAC ¶¶ 53-55. He contends that "[t]his lack of adequate supervisorial training, and/or policies and

---

[4] If plaintiff can allege that he was detained without a *Gerstein* hearing where he would have had an opportunity to refute the sufficiency of the officers' probable cause determination, he may be able to state a Fourth Amendment claim based on his detention.

9

procedures demonstrates the existence of an informal custom or policy of promoting, tolerating, and ratifying the continuing unlawful searches and arrests by officers employed by the City of Oakland[.]" *Id*. ¶ 53. Plaintiff further argues that the City of Oakland "allows its officers to go into the field and make arrests on individuals who allegedly are in possession of oil . . . . [and] even after hold[ing] the plaintiff for over an hour, none [of the officers] has an idea of how to determine what hashish oil was or what it looked, tasted, or smelled like." Opp. at 6.

In *Monell v. Dep't of Soc. Serv. of N.Y.*, 436 U.S. 658, 694 (1978) the Supreme Court recognized vicarious liability for municipal entities who execute actions which "may fairly be said to represent official policy" under section 1983. In dismissing this claim previously, the Court noted that plaintiff failed to support his contention with any facts that tend to show that the officers were acting pursuant to a custom or policy, or that officers were inadequately trained. *See* Jan. 14, 2010 Order at *7. Plaintiff does not allege any new facts tending to show that defendants were acting under any official policy, other than to state that the City of Oakland "allows its officers" engage in the conduct at issue here. This is insufficient to state a claim under *Monell*.

Accordingly, this Court GRANTS defendants motion to dismiss the *Monell* claim, with leave to amend. Should plaintiff choose to amend his complaint, he must set forth specific facts showing that the officers were acting pursuant to a city custom or policy, or that the city failed to provide adequate training.

## II. State Law Claims

### A.     False Arrest

Plaintiff alleges that defendants had no reasonable basis to believe plaintiff committed any of the crimes with which he was charged and that defendants "unlawfully took plaintiff into custody without probable case and restrained plaintiff to a confined space without his permission." SAC ¶ 59. A claim for false arrest involves the "nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short." *Fermino v. Fedco, Inc*. 872 P.2d 559, 567

10

1 (Cal. 1994) (quotations and citations omitted). However, as this Court previously stated, under California Penal Code § 847(b)(1), a police officer is not civilly liable for an arrest if it was lawful or the officer had reasonable cause to believe it was lawful. *See People v. Mower*, 49 P.3d 1067, 1076-77 (Cal. 2002). This Court has already determined that plaintiff has failed to allege that the officers lacked probable cause to arrest plaintiff. Plaintiff has failed to allege any additional facts which show that the officers held plaintiff "without lawful privilege." *Fermino*, 872 P.2d at 567.

Accordingly, this Court GRANTS defendants' motion to dismiss, with leave to amend. Plaintiff's amended complaint must include allegations tending to show that his arrest was made without probable cause.

### B.    Intentional Infliction of Emotional Distress

Plaintiff alleges that defendants' conduct was intentional and reckless and "resulted in severe mental and emotional distress upon Plaintiff." SAC ¶ 64. The elements of a claim for intentional infliction of emotional distress are: (1) extreme and outrageous conduct done with the intention of causing emotional distress, or with reckless disregard of the probability of causing emotional distress; (2) plaintiff's suffering of severe emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct. *Cervantez v. J.C. Penney Co.*, 595 P.2d 975, 983 (Cal. 1979) (citations omitted).

Plaintiff's allegations state only the following: "In doing the acts complained of above, Officers Christopher Craig, J Turnery, and P. Phan acted in an intentional or reckless manner, that was extreme and outrageous and which resulted in severe mental and emotional distress upon Plaintiff." SAC ¶ 64. These allegations are wholly conclusory and amount to no more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. As this Court previously stated, plaintiff's prior complaint failed to provide any facts which supported a reasonable inference that defendants' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Cochran v. Cochran*, 76 Cal. Rpt. 2d 540, 545 (Cal. Ct. App. 1998). Plaintiff has failed

1  to provide any additional facts which would establish the requisite level of outrageousness required for
2  intentional infliction of emotional distress, much less to allege any injury.
3      Therefore, defendants' motion to dismiss this claim is GRANTED, with leave to amend.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants motion to dismiss all claims, with leave to amend. (Docket No. 35). Plaintiff's amended complaint is due no later than **March 22, 2010**. Plaintiff is advised that any amended complaint must include specific allegations supporting each of his causes of action, consistent with the Court's suggestions in this Order and the January 14, 2010 Order, since further amendment will not likely be permitted.

**IT IS SO ORDERED.**

Dated: March 9, 2010

SUSAN ILLSTON
United States District Judge