1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL TURNER,                          No. C 09-03652 SI

        Plaintiff,              **ORDER GRANTING DEFENDANTS'**
                                     **MOTION FOR SUMMARY**
  v.                                     **JUDGEMENT**

OAKLAND POLICE OFFICERS
CHRISTOPHER CRAIG J. TURNER,

        Defendant.
_____/

On May 13, 2011, the Court heard argument on defendants' motion for summary judgment. Having considered the arguments of counsel and the papers submitted, including the supplemental evidence and memorandum, the Court hereby GRANTS defendants' motion.

## BACKGROUND

This action was filed by plaintiff Michael Turner against the City of Oakland and several Oakland police officers who stopped plaintiff's car on March 23, 2009 while plaintiff was riding in the car as a passenger. The sole claim remaining in this case is that defendants Christopher Craig, J. Turner, and P. Phan—all police officers in the city of Oakland—violated plaintiff's Fourth Amendment rights by causing him to be detained under false pretenses for over ten days without bail and without receiving a probable cause hearing.

## I.      Plaintiff's account

Plaintiff explains what happened as follows:

United States District Court
For the Northern District of California

On March 23, 2009, I was not feeling well so I asked Berthuard Lewis to drive me to the grocery store.  On our return from the store, the named defendants stopped my vehicle and detained me and Berthuard Lewis, the driver.  I was in the passenger seat. . . . [After an initial search, t]he defendants said Lewis was in possession of marijuana . . . I also learned that Lewis had marijuana seeds in a small bottle that was inside a sandwich baggie that was inside his backpack. . . .

The police searched my glove box and retrieved a small bottle containing oil and they asked me what it was.  I told them it was blessing oil that my aunt gave me to use in religious worship, and for good luck.  One of the officers told me that I was in violation of parole for being with Lewis.  I told him that that was not one of the conditions of my parole.  The Defendants told me they would find something for which to violate my parole.  The defendants drove Lewis and me around for over an hour.  They searched both of our residences and a few other locations.  They did not find any other contraband on either one of us or at the locations.  They then re-focused on the oil that I told them belonged to me.  Defendant Turner [s]aid "blessing oil my ass" and he told me that I was "going down for the oil."  The Defendants arrested Lewis and me.

I remained in the Alameda County Jail from March 23, 2009 until April 2, 2009.  I never had an opportunity to speak to an attorney about my arrest.  No one told me I was being held on a parole hold, but someone told me I was being held pending the testing of the oil in my possession.  They transported me to court a few times, but I never entered the courtroom or communicated with anyone inside the courtroom . . . . On April 2, 2009, they released me.

The defendants towed my vehicle on March 23, 2009. . . .

I had not violated any of the terms and conditions of parole and I had not committed a new offense.

Decl. of Michael Turner in Opp. to Mot. for Summ. J.("M. Turner Decl.") (Doc. 108) (paragraph

numbers omitted).

The district attorney's office did not pursue any charges in this case.  Decl. of Wayne Johnson

in Opp'n to Mot. for Summ. J. ("Johnson Decl."), Ex. 7.  When plaintiff attempted to recover his vehicle

after he was released, he was informed that the towing and storage bill was over $1,600.  M. Turner

Decl. ¶ 22.  He lost his $2,500 vehicle, and a recently purchased $850 sound system that was installed

inside, and his groceries were spoiled.  *Id.* ¶¶ 22–24.

## II.      Defendant Turner's account

Plaintiff's account does not differ greatly from the account provided by defendant Turner in his

incident report, although defendant Turner does not mention any conversation about blessing oil, and

he provides more details about the initial justification for the seizure, and about later justifications for

2

1   the arrests.  *See* M. Turner Decl. Ex. 1 ("Incident Report").[1]

2       Defendant Turner explains that he and defendant Phan were working "wearing full police utility

3   uniform and operating out of a marked patrol car." *Id.* at 3.  Defendant Turner "decided to initiate an

4   enforcement stop to investigate the status of [plaintiff's] vehicle's registration" after seeing an "orange

5   2008 DMV registration sticker on the rear place of the vehicle – an indicator that the registration of the

6   vehicle was expired." *Id.*  Defendant Turner asked the driver and passenger if they were on parole, and

7   they stated that they were. *Id.*  Defendants Turner and Phan handcuffed Lewis and plaintiff "to further

8   investigate their parole status." *Id.*  Someone ran a wants and warrants check, confirming that Lewis

9   was on parole for "212.5 PC" and plaintiff for "273.5 PC." *Id.*  California Penal Code section 212.5

10  defines first and second degree robbery.  California Penal Code section 273.5 defines willful infliction

11  of corporal injury, a domestic violence crime.

12      Defendant Turner "conducted a full search of LEWIS' person" and "found a pill bottle

13  containing suspected marijuana" in his "left front pants pocket." *Id.* at 4.  Other responding officers

14  searched plaintiff's person and did not find any contraband. *Id.*  Defendant Turner found a backpack

15  in a rear passenger seat. *Id.*  In the front pocket, he "found a small plastic sandwich baggie, with a vial

16  inside containing suspected marijuana seeds for the growing of marijuana plants." *Id.*  The baggie also

17  "contain[ed] a photo of a marijuana plant." *Id.* at 3.  Lewis stated that the backpack was his. *Id.* at 4.

18      "In the glove compartment of the vehicle," defendant Turner found "a small glass bottle, with

19  a rubber stopper, and no identifying labels.  This bottle contained a thick, viscous liquid, gold in color."

20  *Id.*  Another police officer showed defendant Turner "his reference book on drug recognition, 'Law

21  Enforcement Drug ID and Symptom Guide, Third Edition' (Law Tech by Qwik-Code), which included

22  a picture of hashish oil and a recognition reference:  hashish oil is characterized as a thick liquid, gold

23  in color." *Id.*

24      Defendant Turned believed that the liquid in the bottle he found was hashish oil for three

25  reasons:

26  _____

27      [1]    There was some discussion at the hearing as to when this incident report was recorded.
    The report says that its "Printed date/time" was "3/24/09 9:16," the morning after the accident. *Id.* at
28  1.

- LEWIS had suspected marijuana on his person.  Hashish oil is often used by marijuana users as a supplement to the normal "buds" of dried marijuana that is smoked through a pipe or in cigar or cigarette form;

- LEWIS had seeds for the planting of marijuana plants in his backpack, an indicator that he may be cultivating marijuana.  Cultivators of marijuana typically have available to them large amounts of marijuana, which they can process into hashish oil.

- The substance in the bottle strongly resembled the picture of hashish oil pictured in the "Law Enforcement Drug ID and Symptom Guide."

*Id.* He also wrote that "Due to the fact that the suspected marijuana, the suspected hashish oil, and the suspected marijuana seeds were found in and around both subjects, I became concerned that one or both suspects were illegally cultivating marijuana." *Id.* at 5.

Other than this last statement, defendant Turner does not indicate any suspicion that plaintiff and Lewis were acting in concert, nor does he report any facts that could support such a suspicion, other than having found both individuals in the same car.  Defendant Turner does not report plaintiff's statements claiming possession of the oil or explaining that the oil was blessing oil from his aunt.  Defendant Turner does not report smelling the oil, touching the oil, or otherwise opening the bottle.  Defendant Turner does not report any professional experience handling hashish oil, or identifying or being trained to identify hashish oil from its appearance.

Both Lewis and plaintiff were arrested for possession of hashish oil (also called concentrated cannabis), a violation of California Health and Safety Code section 11357(a).  *Id.* at 4.  Defendant Turner contacted the California Department of Corrections and Rehabilitation ("CDCR") and "placed parole holds on both subjects." *Id.* at 4–5.[2]  The incident report lists the "Offenses" for which both Lewis and plaintiff were charged:  neither individual was charged with possession of marijuana or marijuana seeds.  *See id.* at 1–2 (indicating that both individuals were arrested for possession of concentrated cannabis).  However, the report does list the suspected marijuana as having been turned

---

[2]      It is not clear from the record when defendant Turner requested the parole hold. Although the request is discussed in the middle of his report, which would imply that the request was made before defendants searched plaintiff's residence, this evidence is not conclusive.  The CDCR placed the hold no later than 10:41 pm on the night of March 23.  *See* Def. Supporting Evidence Re: Mot. for Summ. J. ("Def. Evidence") Ex. B(2) ("CDCR Authorization").  The incident report says that the traffic stop was initiated at approximately 7:45 p.m. on March 23, 2009, and defendant Turner states in a declaration that he "delivered [plaintiff] to the custody of the Alameda County Sheriff at the jail for booking at approximately 11:40 p.m."  Incident Report at 3; Def. Evidence Ex. A ("J. Turner Decl.") ¶ 10.

into the Oakland Police Department "for evidence/testing," and the suspected marijuana seeds having been turned in "as evidence." *Id.* at 3.[3]

The officers also searched the residences of plaintiff and of Lewis. Defendant Turner spoke to plaintiff's aunt on the phone to confirm that plaintiff lived in her living room; the officers then "conducted a parole search of the living room and common areas of the apartment, with negative results." *Id.* at 5. There is no indication from the report that Defendant Turner asked plaintiff's aunt about the oil when he spoke to her on the phone.

The officers then went to the address Lewis had listed on his driver's license. *Id.* Lewis stated that he no longer lived there, and provided an alternate address. *Id.* When the officers arrived at the address listed on Lewis's driver's license, Lewis's sister answered the door and informed the officers that Lewis was not currently living there. She refused to answer questions about Lewis and slammed the door. *Id.* Defendant Turner "noticed signs" at the home that it "may be the site of a marijuana cultivation site," including covered windows and a strong odor of unburnt marijuana, but did not search the home. *Id.* There is no indication that the officers ever sought a search warrant.

The officers then went to the address Lewis provided. *Id.* His girlfriend opened the door and said that Lewis stayed with her "on and off." *Id.* at 5–6. The police searched the apartment "with negative results." *Id.* at 6. The CDCR later confirmed that the girlfriend's apartment was listed as Lewis's parole address, and that his sister's home had previously been listed as his parole address. *Id.*

Defendant Turner explains that defendant Craig was an acting police sergeant who "responded to our scenes and was kept aware of our searches. He also approved both arrests." *Id.* Defendant Turner wrote plaintiff a citation for violating California Vehicle Code section 4000(a), "expired registration." *Id.* Defendant Phan "admonished" plaintiff and then asked if he wanted to provide a statement. *Id.* Plaintiff declined. *Id.* Defendants Turner and Phan then "transported" plaintiff to North

---

[3]     At the hearing, plaintiff's attorney displayed to the Court a large yellow envelope that he asserted was an evidence envelope that had contained the suspected marijuana and suspected marijuana seeds. He stated that plaintiff's name was written on the envelope, and not Lewis's name. This envelope was never submitted into evidence. Nor is there any declaration before the Court regarding the envelope, or any explanation what the envelope was, where it was from, who had access to it, or who might have written plaintiff's name on it. The Court does not consider the envelope to be evidence in this summary judgment motion.

United States District Court
For the Northern District of California

1    County Jail.  *Id.*

2

3    **III.    Other evidence**

4            The parties have submitted certain other documents in this case, four of which are of particular

5    note.  Along with their motion, defendants submitted a computer printout that Donald Mattison, a

6    lieutenant with the Alameda County Sheriff's Office ("ACSO"), has identified as a "No Bail Detainer

7    record ACSO received from the [CDCR]."  Def. Evidence, Ex. B ("Mattison Decl.") ¶ 3; CDCR

8    Authorization.  That record, time stamped 10:41 p.m. on March 23, 2009, is a transmission from the

9    CDCR to the Glen Dyer Detention Facility, indicating that the CDCR was contacted by defendant

10   Turner, was informed that plaintiff had been charged with possession of hashish oil, and was providing

11   authorization for the Facility to hold plaintiff pending confirmation by the appropriate agent.  CDCR

12   Authorization (text slightly cut of).

13           After the briefing in this case was completed, plaintiff submitted additional evidence,

14   accompanied by a declaration from his attorney.  *See* Decl. of Wayne Johnson in Opp'n to Mot. for

15   Summ. J., Supplemental ("Suppl. Johnson Decl.").[4]  The late submitted evidence consists of an "activity

16   report" and a "charge report" from the CDCR, and an analysis report from the criminalistics division

17   of the Oakland Police Department.  *Id.* Exs. 9 & 10.[5]

18           The CDCR reports appear to be written recommendations from plaintiff's parole agent and the

19   agent's unit supervisor evaluating whether to continue plaintiff's parole hold.  The Charge Report is

20   written on a form labeled "CDC 1502-B," and was signed by the parole agent and unit supervisor on

21   March 27, 2009.  *Id.* Ex. 10 at 2 (pages unnumbered).  It states that plaintiff was charged only with

22   _____

23          [4]      The Court granted defendants' request to respond to plaintiff's late-submitted evidence,
     and defendants submitted an additional brief.  In their supplemental brief, defendants object to the
24   timing and method by which plaintiff supplemented the record.  Although plaintiff should have
     requested leave from the Court before presenting new evidence, Civil L-R 7-3(d), the Court will
25   nonetheless accept the late-submitted evidence.  Plaintiff avers that he did not receive the documents
     until April 7, 2011.  Suppl. Johnson Decl. ¶ 12.  He filed his supplemental declaration on April 8, 2011,
26   and defendants have been given the opportunity to address its contents.

27          [5]      Also submitted was an order of the Alemeda County Superior Court that a vial seized
     from plaintiff on March 23, 2009 be tested for contraband before April 7, 2011; and, should the contents
28   test negative for contraband, be returned to plaintiff.  *Id.* Ex. 8.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

"Possession of marijuana for sales."  *Id.*  Typewritten in a blank space under the heading "**SUPPORTING EVIDENCE**" is:  "On 3/27/09, AOR [Agent of Record] received information via Corpus stating that Turner, Michael was taken into custody by Oakland PD for Possession of Marijuana for Sales."  *Id.*  Handwritten is the note "Late 1502b, unit not notified of arrest and outside unit hold placed."  *Id.*  Typewritten as the parole agent's recommendation is "Retain Parole Hold, pending further investigation; refer to BPH if warranted."  *Id.*[6]  The unit supervisor checked a box next to the statement "I have looked at the information.  I believe there is probable cause to maintain the parole hold."  *Id.* Typewritten into a blank space just below this check box is "AOR to fully investigate current situation, re-case conference with supervisor within six days for needed action/ paperwork."  *Id.*

The Activity Report is written on a form labeled "CDC 1502," was signed by the parole agent on March 30, 2009, and signed by the unit supervisor on April 2, 2009.  *Id.* at 1.  Centered in a blank space, in bold and underlined, are the typewritten words "Possession of Marijuana."  Below, also typewritten, is

> On 3/24/09 AOR received information stating that Turner was arrested by OPD [the Oakland Police Department] for possession of a small amount of marijuana seeds and marijuana.  He was transported and booked into North County Jail pending investigation into the matter, there are no local charges pending.
>
> After a case conference with US achziger [sic] we found that Turner, Michael should remain in the community and referred to Project Choice for employment assistance and NA [Narcotics Anonymous?] for drug treatment.

*Id.*  Under the blank space for the parole agent's recommendation is typewritten "Continue on parole, counsel on expectations, refer to NA for TX and project choice for employment."  *Id.*  The form also contains a number of handwritten notes in various locations, apparently in the handwriting of the unit supervisor.  Not all are legible, but it does clearly say "COP"—continue on parole—"as described above.  AOR to remove hold effective 4-2-09 ensure that subject is released ensure that subject reports as required AOR to counsel, warn suspected refer to a community based program to serve as an alternative sanction in this matter at this time.  AOR to continue with documented c/s [community

[6] According to the CDCR website, "The Board of Parole Hearings (BPH) conducts parole consideration hearings, parole rescission hearings, parole revocation hearings and parole progress hearings for adult inmates and parolees under the jurisdiction of the Department of Corrections and Rehabilitation."  *See* California Department of Corrections and Rehabilitation, "Board of Parole Hearings," at http://www.cdcr.ca.gov/BOPH/index.html (last visited May 13, 2011).

1    supervision?] level of supervisor contacts as required." *Id.*

2            The analysis report is dated March 24, 2011 and states that "a viscous yellow liquid" obtained

3    from a locked evidence depository in sealed conditions "was analyzed and **no common controlled**

4    **substances** were detected." *Id.* Ex. 9 (emphasis original).[7]

5

6                                          **LEGAL STANDARD**

7            Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and

8    any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled

9    to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of

10   demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317,

11   323 (1986).  The moving party, however, has no burden to disprove matters on which the non-moving

12   party will have the burden of proof at trial.  The moving party need only demonstrate to the Court that

13   there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

14           Once the moving party has met its burden, the burden shifts to the non-moving party to "set out

15   'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)).  To

16   carry this burden, the non-moving party must "do more than simply show that there is some

17   metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

18   475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there

19   must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v.*

20   *Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

21           In deciding a summary judgment motion, the Court must view the evidence in the light most

22   favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255.

23   "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from

24   the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.*

25   However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise

26   _____

27           [7]     Plaintiff also states that the vial of oil that was returned was similar to the vial that was
28   taken, but that it is not the same vial.  He does not explain how that fact would be material to his claim,
     especially since the vial that was returned tested negative for contraband.

1    genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d

2    730, 738 (9th Cir. 1979).  The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)).

3

4                                        **DISCUSSION**

5          The single claim that remains against defendants is that they violated plaintiff's Fourth

6    Amendment right to be free from unreasonable seizures by deliberately misreporting information to the

7    California Department of Corrections and Rehabilitation (CDCR) in order to obtain a "parole hold"

8    without actually having sufficient cause to believe that plaintiff violated the terms of his parole and was

9    subject to the parole hold statute, which in turn caused plaintiff to remain in custody for nearly eleven

10   calendar days without a preliminary hearing, instead of the normal 48 hours.

11         The facts of this case place it at the complex intersection of Fourth Amendment law, Due Process

12   law, and California Statutes and Regulations regarding parolees.  Because defendants have been sued

13   in their individual capacity under 42 U.S.C. section 1983, the Court will analyze plaintiff's claim

14   through the doctrine of qualified immunity.[8]

15         A defendant may be entitled to qualified immunity if his conduct "'[did] not violate clearly

16   established statutory or constitutional rights of which a reasonable person would have known.'"

17   *Pearson v. Callahan*, 555 U.S. 223, __, 129 S. Ct. 808, 815 (2009) (*quoting Harlow v. Fitzgerald*, 457

18   U.S. 800,

19   818 (1982)).  A court considering a claim of qualified immunity must determine whether the plaintiff

20   has alleged the deprivation of an actual constitutional right and whether such right was clearly

21   established such that it would be clear to a reasonable officer that her conduct was unlawful in the

22   situation she confronted. *Id.* at 818.  The Court may exercise its discretion in deciding which prong to

23   address first, in light of the particular circumstances of each case. *Id.* (overruling the sequence of the

24   two-part test that required determination of a deprivation first and then whether such right was clearly

25

26         [8]      Defendants did not brief the question of qualified immunity, although they did brief the
27   question of constitutional violation, which is one component of the qualified immunity analysis.
     Additionally, they raised it as an affirmative defense in their answer to the operative complaint. *See*
     Answer to Third Am. Compl. (Doc. 77) at 7.  And the parties were given the opportunity to discuss the
28   question of qualified immunity at the hearing on this motion.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

established, as required by *Saucier v. Katz*, 533 U.S. 194 (2001), but noting that the *Saucier* sequence is often appropriate and beneficial). A ruling on the issue of qualified immunity should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier*, 533 U.S. at 200. Qualified immunity is particularly amenable to summary judgment adjudication. *Martin v. City of Oceanside*, 360 F.3d 1078, 1081 (9th Cir. 2004).

The inquiry of whether a constitutional right was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 202. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that her conduct was unlawful in the situation she confronted. *Id.* It is not necessary that a prior decision rule "the very action in question" unlawful for a right to be clearly established. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Rather, "the contours of the right must be sufficiently clear so that a reasonable official would know that his conduct violates that right." *Browning v. Vernon*, 44 F.3d 818, 823 (9th Cir. 1995). The plaintiff bears the burden of proving the existence of a "clearly established" right at the time of the allegedly impermissible conduct. *Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992). The defendant bears the burden of establishing that her actions were reasonable, even if she violated the plaintiff's constitutional rights. *Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447, 1450 (9th Cir. 1995); *Neely v. Feinstein*, 50 F.3d 1502, 1509 (9th Cir. 1995).

## I.     Deprivation of a constitutional right

Plaintiff argues that defendants did not actually believe that the vial they took from him contained hashish oil, and that they lied to the CDCR by saying that it was hashish oil. He argues that defendants did this in order to detain plaintiff for as long as possible without a preliminary hearing, because they knew that they did not have probable cause to believe that he had violated the law or his conditions of parole, and therefore the charge would not survive a preliminary hearing. Plaintiff argues that the Consolidated Arrest Report "demonstrates the Defendants had no idea whether the substance was concentrated cannabis," and that the vial was "not arguably contraband." Plaintiff explains that "Defendants never anticipated Plaintiff would receive a preliminary hearing or a parole hearing. The

1    arrest and the entire process was a subterfuge to deprive Plaintiff of his liberty for as long as possible."

2    Plaintiff argues that this conduct violated his Fourth Amendment right to be free from unreasonable

3    seizures.[9]

4

5        **A.  The Fourth Amendment rights of parolees**

6        The Fourth Amendment protects citizens against "unreasonable searches and seizures." U.S.

7    Const. amend. IV.  "The 'general Fourth Amendment approach' requires courts to examine the totality

8    of the circumstances to determine whether a search or seizure is reasonable."  *United States v. Guzman-*

9    *Padilla*, 573 F.3d 865, 876 (9th Cir. 2009).  "The first aspect of the reasonableness inquiry concerns the

10   level of suspicion that the government's agents must possess to justify their intrusions."  *Id.*  "The

11   second aspect of the inquiry concerns the manner in which a seizure is conducted."  *Id.*  When

12   conducting reasonableness analysis, "courts consider the totality of the circumstances, and 'balance the

13   nature and quality of the intrusion on the individual's Fourth Amendment interests against the

14   importance of the governmental interests alleged to justify the intrusion.'"  *Id.* at 876–77 (quoting *Scott*

15   *v. Harris*, 550 U.S. 372, 383 (2007)) (citation omitted).

16       Parolees have a Fourth Amendment right to be free from unreasonable searches and seizures,

17   but a court's reasonableness analysis must take into account the fact that the person is a parolee.  *See*

18   *Sampson v. California*, 547 U.S. 843, 850 n.2, 852 (2006).  Thus, because a parolee has a diminished

19   expectation of privacy, under certain circumstances he can be searched without cause.  *See generally*

20   *id.* (holding that a suspicionless search of a parolee conducted where the parolee has agreed to searches

21   without cause, pursuant to California Penal Code section 3067(a), is reasonable and therefore

22   constitutional).  Of particular import to this case is the rule that "if a parole officer reasonably believes

23   a parolee is in violation of his parole, the officer may arrest the parolee," *United States v. Rabb*, 752

24   F.2d 1320, 1324 (9th Cir. 1984), even if he does not have "probable cause," *United States v. Butcher*,

25

26

27

28       [9]      Plaintiff does not argue that, by acting with an improper motive, defendants would have
    violated his constitutional rights even if they had probable cause.

**United States District Court**
For the Northern District of California

11

United States District Court
For the Northern District of California

1    926 F.2d 811, 814 (9th Cir. 1991).[10]

2        *Sampson*, *Rabb*, and *Butcher* all address the level of suspicion required for a search or seizure

3    of a parolee to be reasonable at its *inception*.  It is not only the initial search or seizure that must be

4    reasonable, but also any subsequent detention.  *See Terry v. Ohio*, 392 U.S. 1, 18 (1968) ("[A] search

5    which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable

6    intensity and scope.").  For example, it may be reasonable for a police officer to arrest a non-parolee

7    without a warrant based on his "on-the-scene assessment of probable cause."  *See Gerstein v. Pugh*, 420

8    U.S. 103, 113 (1975).  But in order for "extended restraint of liberty following arrest" to be reasonable,

9    there must be a judicial determination of probable cause shortly thereafter.  *Id.* at 114; *see also County*

10   *of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) (explaining that non-parolees arrested without a

11   warrant should generally be provided with "judicial determinations of probable cause within 48 hours

12   of arrest").[11]

13

14   **B.  California parole holds and the Fourth Amendment**

15       In this case, plaintiff was detained for nearly eleven days without hearing or bail pursuant to

16   California's "parole hold" statute and regulations.[12]  When a parolee is detained for violating a condition

17

18       [10]    The legality of the seizure of a California parolee is not affected by the fact that it is

19   effected by a peace officer other than the parolee's parole officer.  *Id.* (citing *People v. Kanos*, 14 Cal.
     App. 3d 646 (1971)).

20       [11]    Even 48 hours may not be fast enough where "the arrested individual can prove that his

21   or her probable cause determination was delayed unreasonably."  *Id.*  "Examples of unreasonable delay
     are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill

22   will against the arrested individual, or delay for delay's sake."  *Id.*  "Where an arrested individual does
     not receive a probable cause determination within 48 hours, . . . the burden [is on] the government to

23   demonstrate the existence of a bona fide emergency or other extraordinary circumstance" justifying the
     extended time period.  *Id.* at 57.
         Although there are some cases where it is not clear whether the 48 hour rule in *McLaughlin* or

24   the promptness rule in *Morrissey* would apply, plaintiff does not argue that this is such a case.  *See*
     *Atkins v. City of Chicago*, 631 F.3d 823, 832–38 (7th Cir. 2011) (Hamilton, J., concurring in part and

25   concurring in the judgment) (discussing the appropriate rule to apply where the police believe that an
     arrestee is a parolee, but the arrestee denies that he is).

26

27       [12]    A parolee is not entitled under the Fourth Amendment to the probable cause hearing

     described *Gerstein* and *McLaughlin*, at least where he is being detained for violating the terms and

28   conditions of his parole.  Rather, he is constitutionally entitled to a preliminary hearing under the Due
     Process Clause, after which he can only be held pending a final revocation hearing upon the finding by

United States District Court
For the Northern District of California

1    of parole, is arrested on new criminal charges ("a prima facie violation of parole"), or is serving a jail

2    sentence, a parole hold prevents him from being released on bail, on his own recognizance, or after the

3    expiration of any sentence he may have been required to serve on the new criminal charges.  *In re Law*,

4    10 Cal. 3d 21, 23 n.2 (1973); *see also People v. Holdsworth*, 199 Cal. App. 3d 253, 261 (1988).  Parole

5    holds are authorized by California Penal Code section 3060.

6        Not all California parolees suspected of violating parole may be placed on a parole hold.  Rather,

7    according to California regulations, there must be *probable cause* to believe that the parolee violated

8    parole.  15 CCR § 2600.  Additionally, the parolee can only be held if "(1) He is a danger to himself[;]

9    (2) He is a danger to the person or property of another[; or] (3) He may abscond."  *Id.*; *see also* 15 CCR

10   § 2601; *People v. Hunter*, 140 Cal. App. 4th 1147, 1153 (2006).[13]  California law vests the authority to

11   place a parole hold, and sets the constraints upon imposing such a hold, on "[t]he parole authority" and

12   "parole agent[s]."  *See* Cal. Penal Code § 3060; 15 CCR § 2600.  California law then requires that "a

13   parolee . . . receive a probable cause hearing within ten business days of the receipt of notification of

14   the parole violation charges."  *See Brownlow v. Schwarzenegger*, No. CIV S10-0706 GEB DAD P, 2010

15   WL 4007217, * 2 (E.D. Cal. Oct. 12, 2010) (citing *In re Marquez*, 153 Cal. App. 4th 1, 4–5 (2007);

16   *Valdivia v. Davis*, 206 F. Supp. 2d 1068 (E.D. Cal. 2002)).[14]

17       Where state law provides the substantive law pursuant to which a person is detained, the

18   reasonableness of the detention must take into account the substantive state law provisions.  *See*

19   *Pearson*, 129 S. Ct. at 819 (citing, inter alia, the Fourth Amendment seizure analysis in *Egolf v. Witmer*,

20

21   an independent officer that there is probable cause to believe that he committed an act or acts which
     would violate parole.  *See Morrissey v. Brewer*, 408 U.S. 471 (1972).

22       [13]   The CDCR manual uses the phrase "reasonable cause" rather than probable cause,
23   although it also includes the additional requirements of dangerourness or flight risk.  *See also* Cal. Dep't
     of Corrections & Rehabilitation, Department Operations Manual 687, § 81030.1 (revised March 8, 1990;
24   updated through Jan. 1, 2011), *available at* http://www.cdcr.ca.gov/Regulations/Adult_Operations/
     DOM_TOC.html ("A parolee shall be arrested and a PC 3056 parole hold placed when there is
25   reasonable cause to believe a parolee has violated the conditions of parole and: • Is a danger to self; or,
     • Is a danger to person or property of another; or, • May abscond.  A parolee will not be arrested either
26   as punishment or as a means of instilling fear."); *id.* at § 81030.15.2 (explaining that a parole agent
     "evaluates information provided by other law enforcement agency personnel and makes an independent
27   judgment whether a parole violation or criminal act has occurred").

28       [14]   Plaintiff does not challenge the constitutionality of the California parole hold statute or
     regulations.

13

526 F.3d 104, 109–11 (3d Cir. 2008) for the proposition that the constitutionality of an act can depend on "interpretation of state law"); *United States v. Rodriguez-Lopez*, 444 F.3d 1020, 1022 (8th Cir. 2006) (discussing the reasonableness of a traffic stop where a police officer made a mistake of state law); *cf. Samson*, 547 U.S. at 852 (discussing a California parolee's reasonable expectation of privacy with reference to California statutes and regulations regarding parole).  Although California law and the constitution only required defendants to have a reasonable belief that plaintiff violated parole when they initially detained him, *see Rabb*, 752 F.2d at 1324, *People v. Villareal*, 262 Cal. App. 2d 438 (1968), California law and the constitution required "[t]he parole authority" and "parole agent[s]" to have probable cause in order to incarcerate plaintiff without bail and without respect to the fact that the district attorney's office did not pursue drug possession charges, *see* Cal. Penal Code § 3060; 15 CCR § 2600.

### C.      Plaintiff's constitutional rights

Plaintiff argues that defendants lied to or recklessly misled the parole authority into believing that defendants had probable cause to believe that plaintiff violated the terms of his parole and therefore was subject to the parole hold statute.  Plaintiff argues that this caused him to be detained for an unreasonable amount of time in violation of the Fourth Amendment.[15]

A person may not apply for an arrest warrant without sufficient facts to establish probable cause, because such an application "create[s] the unnecessary danger of an unlawful arrest."  *See Malley v. Briggs*, 475 U.S. 335, 345 (1986).  It is no defense that a judicial officer will review the application independently.  *See id.* at 345–46 ("It is true that in an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it.  But ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate

---

[15]      Defendants argue that the Court's prior dismissal of plaintiff's wrongful arrest claim means that plaintiff may not make this argument.  The Court dismissed plaintiff's wrongful arrest claim because he failed to articulate the claim in his complaint, even after being granted leave to amend.  No part of that dismissal constituted a factual finding that defendant had probable cause to believe that the oil in plaintiff's possession was hashish oil.

14

United States District Court
For the Northern District of California

1  should.").[16]  There is no reason to think that this rule should be different where it is an executive rather

2  than judicial officer who is authorizing the detention, or where the determination is being made after

3  rather than before the arrest.  If defendants "deliberately or recklessly" misled the parole authority into

4  believing erroneously that probable cause existed, and this caused the parole authority to approve the

5  parole hold, then plaintiff has established a violation of his constitutional rights.  *See Galen v. County*

6  *of Los Angeles*, 477 F.3d 652, 663 (9th Cir. 2007).

7         Defendants argue that they cannot be held liable for plaintiff being placed on a parole hold,

8  because it is the CDCR that authorizes parole holds and that directed plaintiff to be placed on a parole

9  hold in this case.  If plaintiff were arguing that the CDCR did not make the requisite findings before

10 placing a parole hold, *see* 15 CCR §§ 2600, 2601, or that CDCR placed a parole hold independent of

11 any action of defendants, defendants' argument would have merit.  But plaintiff's argument is that

12 defendants provided false material information to the CDCR when requesting that the CDCR authorize

13 a parole hold, for the purpose of detaining plaintiff for as long as possible without the requisite

14 justification required by the constitution.  This allegation is properly made against defendants, not the

15 CDCR.[17]

16 _____

17     [16]    The Ninth Circuit has held that "a judicial officer's exercise of independent judgment
18 in the course of his official duties is a superseding cause that breaks the chain of causation linking law
   enforcement personnel to the officer's decision."  *Galen v. County of Los Angeles*, 477 F.3d 652, 663
19 (9th Cir. 2007).  However, if the law enforcement personnel "prevented" the judicial officer "from
   exercising his independent judgment" by "deliberately or recklessly" misleading the judicial officer, and
20 that is a but-for cause of the judicial officer's action, the chain of causation is not broken.  *Id.*  Such is
   the allegation in this case.

21     [17]    The Ninth Circuit has long held that arresting police officers can be held liable for
22 unreasonable delay in the pretrial proceedings of non-parolee arrestees, if they have not "acted
   consistently with their statutory and constitutional duties to ensure that [the arrestee] be presented
23 promptly to a judicial officer."  *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1482 (9th Cir. 1993)
   (footnote omitted).  There is no reason to think that an arresting officer cannot be held liable, under
24 appropriate circumstances, for the unreasonable continued seizure of a parolee as well.  For example,
   "[p]olice officers cannot justify a suspicionless search and arrest on the basis of an after-the-fact
25 discovery of an arrest warrant or a parole condition."  *See, e.g., Moreno v. Baca*, 431 F.3d 633, 641 (9th
   Cir. 2005).  Even where an officer does know that he has arrested a parolee, he may still be liable for
26 violating that parolee's constitutional rights.  For example, if the officer causes a preliminary hearing
   to be delayed because of ill will toward the arrestee, the law indicates that this might be a reason to hold
27 the officer liable.  *Cf. County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) (explaining in the
   Fourth Amendment context that delay of a preliminary hearing for a non-parolee arrested without a
28 warrant is actionable if unreasonable, for example if it is "a delay motivated by ill will against the
   arrested individual, or delay for delay's sake"); Cal. Penal Code § 3067(d) ("It is not the intent of the

The record contains evidence that plaintiff was arrested for the Health and Safety Code violation of possession of hashish oil, and that defendant Turner called the CDCR and "placed" a parole hold. Incident Report at 4–5.  The only additional evidence about what defendant Turner told the CDCR is the CDCR transmission to the Glen Dyer Detention Facility, which states that plaintiff was charged with "poss of hashish oil."  Mattison Decl. Ex. 2.  Viewed in the light most favorable to plaintiff, this is evidence that defendant Turner communicated to the CDCR that he had probable cause to believe that plaintiff was in possession of hashish oil, and that this communication was a but-for cause of the CDCR's placement of a parole hold.[18]  The next question for the Court is whether defendants had probable cause.  Because of the nature of this inquiry, the Court will move immediately to the second part of the qualified immunity test:  whether it would be clear to a reasonable officer that defendants' conduct was unlawful in the situation they confronted.[19]

## II.  Qualified immunity

"[E]ven absent probable cause, qualified immunity is available if a reasonable police officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information the [arresting] officers possessed." *Blankenhorn v. City of Orange*, 485 F.3d 463, 476 (9th

---

Legislature to authorize law enforcement officers to conduct searches [of parolees] for the sole purpose of harassment.").  These authorities indicate that an arresting officer could be held liable for lying to or deliberately misleading the body tasked with making decisions about parole revocation by providing false information that is material to the determination, for the purpose of securing the prolonged detention of a parolee without the requisite justification.

[18]    Neither party has mentioned, let alone analyzed, the parole hold requirement that a parolee be a danger to himself or others, or be a flight risk.  While there is no evidence on the record that plaintiff fit such a description, there is also no evidence that defendants were involved in the parole board's implicit finding that plaintiff did fit such a description, and there is no allegation that defendants could or did violate plaintiff's constitutional rights with respect to that prong of the parole hold statute. Nothing in this order is intended to discuss the merits of such a claim.  The Court does assume, however, that defendants were or reasonably should have been aware of this regulatory requirement.

[19]    In their papers, defendants do not argue that anything less than probable cause was required before they could request a parole hold.  Although at the hearing there was some discussion of whether the probable cause standard applies, and the Fourth Amendment claim in this case is somewhat novel, the many different cases discussed in this section demonstrate that it is clearly established that police officers may not request a parole hold in California without a reasonable objective basis to believe that they have probable cause to believe that the parolee violated the terms and conditions of his parole, either by committing a new crime or otherwise.

Cir. 2007); *see also Malley*, 475 U.S. at 339 ("[A]n officer who seeks an arrest warrant by submitting a complaint and supporting affidavit to a judge is not entitled to immunity unless the officer has an objectively reasonable basis for believing that the facts alleged in his affidavit are sufficient to establish probable cause."); *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.").

In the incident report, defendant Turner articulated three reasons for suspecting that the vial in the glove compartment contained hashish oil:

> - LEWIS had suspected marijuana on his person. Hashish oil is often used by marijuana users as a supplement to the normal "buds" of dried marijuana that is smoked through a pipe or in cigar or cigarette form;
>
> - LEWIS had seeds for the planting of marijuana plants in his backpack, an indicator that he may be cultivating marijuana. Cultivators of marijuana typically have available to them large amounts of marijuana, which they can process into hashish oil.
>
> - The substance in the bottle strongly resembled the picture of hashish oil pictured in the "Law Enforcement Drug ID and Symptom Guide."

*See* Incident Report at 4. Defendants further argue that their suspicion was justified because plaintiff and Lewis were parolees present together in a single vehicle with expired registration, and because defendants had reasons to believe that Lewis's sister's house contained a grow operation.

Defendants argue that several of the reasons they articulated, viewed in isolation, would constitute probable cause. This is incorrect. Finding an unmarked bottle of oil in a glove compartment, even after finding a small amount of marijuana and marijuana seeds in the personal possession of the driver of the car, is not the same as finding "in someone's pocket a baggie containing a green leafy substance and rolling papers." *United States v. Wallace*, 213 F.3d 1216 (9th Cir. 2000).[20] Nor was it per se reasonable to impute Lewis's suspected criminal conduct on plaintiff, his companion, simply because both individuals were parolees in the same vehicle. *See Maryland v. Pringle*, 540 U.S. 366

---

[20]    This is especially so where, as here, the police officers did not have professional experience identifying hashish oil, the oil was lighter in color than either exemplar in the drug identification book the police officers used, no drug paraphernalia was found in the car, plaintiff explained what the oil was, defendants had the opportunity to confirm plaintiff's story either by asking his Aunt when they spoke to her or by smelling the oil, and defendants acknowledged a familiarity with the smell of unburnt marijuana. Moreover, small vials of innocuous oils, with handmade labels or no labels at all, are commonly sold at street markets and street corners in San Francisco and elsewhere.

United States District Court
For the Northern District of California

(2003) (holding that "it was reasonable for the officer to infer a common enterprise" among vehicle occupants based on the facts of the case); *United States v. Buckner*, 179 F.3d 834, 839 (9th Cir. 1999) ("Murry was the passenger in a car loaded with a commercial quantity of marijuana, the car belonged to neither occupant, and the car was procured under suspicious circumstances.  Given these facts, a prudent and experienced police officer might reasonably suspect that the passenger is involved in drug smuggling.").[21]  Nor would defendants have been justified in securing a parole hold based solely on plaintiff's expired vehicle registration, given the requirement that the CDCR find that the parole violator be a danger to himself or others, or might abscond.  *See United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005) ("[O]fficers have an obligation to understand the laws that they are entrusted with enforcing . . . .").  Whether or not a reasonable police officer could infer that a parolee who is in possession of hashish oil is ipso facto a danger to himself or others, and therefore subject to a parole hold, such an inference would be unreasonable where the parolee merely has expired plates.

Although these facts, in isolation, do not constitute probable cause, they are all articulable reasons for suspecting that the unmarked vial of oil was contraband.  The Court must consider all of the facts and explanations together, as well as the leeway given to police officers' on-the-scene assessments of probable cause generally, and the additional layer of reasonableness inquiry courts conduct during a qualified immunity analysis.  Given the basic resemblance of the oil to the photograph and description of hashish oil in the drug identification guide, the fact that the vial was unmarked and in a car containing marijuana and marijuana seeds, the fact that the car was owned by plaintiff and had expired plates, case law regarding drug identification, and case law regarding permissible inferences in a vehicle-search context, the Court concludes that a reasonable police officer *could* have believed that his conduct

---

[21]     The evidence here is that plaintiff and Lewis had $100 of groceries in the car, there was a small amount of drugs and seeds in Lewis's personal possession, and defendants found no cash. Turner Decl. ¶ 4 & 23.  Defendants searched plaintiff's residence and Lewis's actual residence, where they found no evidence of drugs, drug dealing, or drug growing.  (Although the incident report speculated that Lewis's sister's home "may" have been the site of a marijuana growing operation, it also confirmed that Lewis did not live with her sister, and there is no indication that defendants ever investigated further.)  Defendant Turner himself admits that it takes "large amounts of marijuana" to "process into hashish oil."  Neither arrestee was on parole for a drug crime, neither was prohibited from associating with other parolees, and defendants were aware of both of these facts.  All of this is a strong indication that Turner and plaintiff were in the car together not because they were in a joint drug growing enterprise large enough to produce hashish oil, but because they went to the grocery store.

1    requesting a parole hold was lawful, because he *could* reasonably have believed that he had probable

2    cause to believe that plaintiff had violated the terms and conditions of his parole.  *See Pringle*, *supra*,

3    540 U.S. 366; *Wallace*, *supra*, 213 F.3d 1216; *Buckner*, *supra*, 179 F.3d 834.  Therefore, defendants are

4    entitled to qualified immunity on the remaining claim.

5

6    **III.     Late submitted evidence**

7           After the briefing in this case was completed, plaintiff submitted evidence that plaintiff says

8    indicates that the CDCR was actually provided with objective false information regarding the reasons

9    for the plaintiff's arrest.  *See* Johnson Decl., Supp., Ex. 10.  The Court granted defendants' request to

10   respond to plaintiff's late-submitted evidence, and defendants submitted an additional brief.

11          The late submitted evidence consists of two activity reports from the CDCR.  One report, dated

12   March 27, 2009, states that "On 3/27/09, AOR [Agent of Record] received information via Corpus

13   stating that Turner, Michael was taken into custody by Oakland PD for Possession of Marijuana for

14   Sales."  Decl. of Wayne Johnson in Opp'n to Mot. for Summ. J., Ex. 10.  It lists as the only pending

15   charge possession of marijuana for sales.  The second report is dated March 30, 2009, and it is signed

16   by the CDCR unit supervisor on April 2, 2009.  Centered, in bold, and underlined are the words

17   "Possession of Marijuana."  Below, the report states that "On 3/24/09 AOR received information stating

18   that Turner was arrested by OPD [the Oakland Police Department] for possession of a small amount of

19   marijuana seeds and marijuana."  *Id.*  The reports are signed by Agent Stroughter, presumably the AOR.

20          The implication that plaintiff wishes drawn from these reports is that defendants falsely informed

21   the CDCR that they arrested plaintiff for possession of marijuana with intent to sell in order to secure

22   authorization to place a parole hold.  If it were possible to view the newly submitted evidence in that

23   manner, defendants would not be entitled to summary judgment.  However, as defendants argue, other

24   evidence on the record prevents the Court from making the inference that plaintiff requests.

25          Specifically, defendants submitted with their original motion what Donald Mattison explains in

26   his declaration is a "No Bail Detainer record" that the Alameda County Sheriff's Office "received from"

27   CDCR.  Ex. B ¶ 3, Am. Ex. B(2).  That record is a computer printout of a transmission from the CDCR,

28   indicating that the CDCR was contacted by defendant Turner, was informed that plaintiff had been

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    charged with possession of hashish oil, and was providing authorization for the Glen Dyer Detention

2    Facility to hold plaintiff pending confirmation by the appropriate agent. *Id.* (slightly cut off). This

3    evidence is consistent with defendant Turner's statement in his police report that he "called" CDCR and

4    "placed parole holds on both subjects." Ex. 1.

5         The newly presented evidence is troubling. Agent Stroughter was not "notified of [the] arrest"

6    in a timely manner, and therefore his charge report was "[l]ate." Decl. of Wayne Johnson in Opp'n to

7    Mot. for Summ. J., Ex. 10. The initial reason that Agent Stroughter believed that plaintiff was being

8    detained—possession of marijuana with intent to distribute—had no factual or logical connection to the

9    actual arrest or parole hold. Later, he believed that plaintiff had been arrested for possession of

10   marijuana seeds and marijuana—despite the fact that the police only suspected Lewis of these crimes,

11   and despite the fact that neither Lewis nor plaintiff had been arrested for them. It appears that the

12   CDCR continued to hold plaintiff for almost eleven days—and ultimately referred plaintiff to drug

13   counseling—without anyone reading the police report, talking to plaintiff, talking to the arresting

14   officers, accessing plaintiff's criminal arrest record, or even looking at the CDCR parole hold itself.

15   Certainly Agent Stroughter had not received a police report as of the morning of March 27, four days

16   after the arrest. *See* M. Turner Decl. Ex. 5 (Agent Stroughter's faxed request for police report). It is

17   not clear at all that the CDCR ever underwent the proper analysis for placing a parole hold to begin

18   with, by engaging in any analysis of why plaintiff might be a danger to himself or others or might

19   abscond.

20        However, defendants are correct that the evidence clearly shows that *defendant Turner* provided

21   CDCR with the *correct* information. The newly presented evidence does not create a genuine issue of

22   material fact as to whether defendants are entitled to qualified immunity.[22]

23

24   ───────────────

25        [22]    This case is troubling. From all appearances, plaintiff was abiding by the terms and
     conditions of his parole and cooperated fully with defendants from the moment that his vehicle was
26   stopped until he was turned over to the Alameda County Jail. The record discloses no good reason for
     plaintiff to have been taken into custody and held for eleven days, lost his car, lost his groceries, and
27   been referred to drug treatment, all apparently without having any ability to explain his story to someone
     who would listen. This Order does not endorse anyone's actions in this case, but merely finds that
28   defendants are entitled to qualified immunity on the claim that they violated plaintiff's Fourth
     Amendment rights.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion for summary judgment on the remaining claim.  (Doc. 98.)

**IT IS SO ORDERED.**

Dated:  June 30, 2011

_____
SUSAN ILLSTON
United States District Judge